1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE WESTERN DISTRICT OF WASHINGTON

10                              AT SEATTLE

11  CARL BERKELHAMMER, Individually and         Case No. 2:18-cv-00812-RSM
    On Behalf of All Others Similarly Situated,
12
                          Plaintiff,
13                                              **AMENDED CLASS ACTION**
            v.                                  **COMPLAINT FOR VIOLATION OF**
14                                              **THE FEDERAL SECURITIES LAWS**
    FUNKO, INC.; BRIAN MARIOTTI; RUSSELL
    NICKEL; KEN BROTMAN; GINO
15  DELLOMO; CHARLES DENSON; DIANE              **JURY TRIAL DEMANDED**
    IRVINE; ADAM KRIGER; RICHARD
16  McNALLY; GOLDMAN, SACHS & CO.; J.P.
    MORGAN SECURITIES LLC; MERRILL
17  LYNCH, PIERCE, FENNER & SMITH
    INCORPORATED; PIPER JAFFRAY & CO.;
18  JEFFERIES LLC; STIFFEL, NICOLAUS &
    COMPANY, INCORPORATED; BMO
19  CAPITAL MARKETS CORP.; SUNTRUST
    ROBINSON HUMPHREY, INC.; ACON
20  INVESTMENTS, L.L.C.; and
    FUNDAMENTAL CAPITAL, LLC,
21
                          Defendants.
22

23         Lead Plaintiff Carl Berkelhammer ("Plaintiff"), individually and on behalf of all other

24  persons similarly situated, by his undersigned attorneys, for his complaint against Defendants

25  (defined below), alleges the following based upon personal knowledge, as to himself and his own

26  acts, and upon information and belief, as to all other matters, based upon, *inter alia*, the

27  investigation conducted by and through his attorneys, which included, among other things: a review

28

AMENDED CLASS ACTION COMPLAINT - 1                    **TOUSLEY BRAIN STEPHENS PLLC**
(No. 2:18-cv-00812 RSM)                                1700 Seventh Avenue, Suite 2200
                                                         Seattle, WA 98101-4416
                                                          Tel.: 206-682-5600

of Defendants' public documents, conference calls, and announcements; U.S. Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding Funko, Inc. ("Funko" or the "Company"); analysts' reports and advisories about the Company; and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a federal securities action on behalf of a class consisting of all persons who purchased or otherwise acquired Funko securities pursuant to its initial public offering (the "IPO" or "Offering") and/or traceable to the Company's IPO commenced on or around November 1, 2017.  This action asserts strict-liability, non-fraud claims under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against: (1) Funko; (2) certain of Funko's senior executives and directors who signed, or otherwise authorized the signing of, the Registration Statement (defined below) in connection with the Offering; (3) each of the investment banks that acted as underwriters for the Offering; and (4) certain private equity defendants, at whose direction and under whose control Funko and certain of aforementioned Defendants acted.  This action seeks to recover damages caused by Defendants' violations of the Securities Act for the false and misleading statements issued in connection with Funko's IPO.

2.     Funko is a publicly traded pop culture consumer products company that sells, among other things, bobble heads and action figures.  Headquartered in Everett, Washington, and incorporated in Delaware, Funko develops, manufactures, and sells its products globally, both directly, through its own e-commerce and sales channels, and indirectly, through distribution partnerships and deals with independent retailers, with particular focus on customers in the United States and Europe.

3.     The claims in this action arise from the materially misleading Registration Statement and Prospectus (defined below) issued in connection with the Offering.  In the IPO, the Company sold 10,416,666 shares of Class A common stock at a price to the public of $12.00 per

AMENDED CLASS ACTION COMPLAINT - 2
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

share.  According to the Company, it received net proceeds of approximately $116.4 million after deducting underwriting discounts and commissions.

4.     The Registration Statement contained untrue statements of material facts, omitted to state material facts necessary to make statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.  Specifically, the Registration Statement: (1) failed to disclose that Funko's profits and growth were not as positive as the Company represented; (2) materially overstated Funko's net intangible assets, including intellectual property; (3) materially misrepresented to investors that Funko's business model and customer base would insulate it from adverse industry, sales, and earnings trends; (4) omitted key facts about Funko's slowing sales and excess inventory; and (5) failed to disclose to investors *known* trends impacting Funko at the time of the IPO and failed to adequately describe risks the Company faced in the "Risk Factor" section, constituting violations of two key SEC regulations.  As a result, Defendants' statements in the Registration Statement regarding Funko's business, operations, and prospects were materially false and/or misleading.

5.     On December 21, 2017, the price of Funko's Class A common stock closed at $6.00 per share, or 50% below the Company's $12.00 IPO price.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class (defined below) members have suffered significant losses and damages.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77*l*, and 77o).

7.     This Court has jurisdiction over this action pursuant to §22 of the Securities Act (15 U.S.C. §77v) and 28 U.S.C. §1331.

8.     Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b), as the Company has principal executive offices and conducts business in this judicial District.

AMENDED CLASS ACTION COMPLAINT - 3
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

9.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

### A.      Plaintiff

10.     Plaintiff acquired shares of Funko Class A common stock in the IPO from Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") pursuant to the Registration Statement. Plaintiff's acquisition of the shares of the Company came at the invitation to submit an order or indication of interest to invest in the IPO by Defendant Goldman Sachs at the behest of Funko. The shares of the Company were acquired and held at artificially inflated prices and Plaintiff has suffered damages thereby.  Plaintiff's certification was previously filed with the Court at ECF No. 38-1.

### B.      Defendants

11.     Defendant Funko describes itself as a pop culture consumer products company and manufactures licensed pop culture collectible items.  Funko is a Delaware corporation with principal executive offices located at 2802 Wetmore Avenue, Everett, Washington 98201. Funko's Class A common stock trades on the Nasdaq Global Select Market ("Nasdaq") under the ticker symbol "FNKO."  Funko is a "controlled company" under Nasdaq rules because more than 50% of the voting power for the Company's governance is held by Defendants ACON Investments, L.L.C. ("ACON Investments"), Brian Mariotti ("Mariotti"), and Fundamental Capital, LLC ("Fundamental Capital").

12.     The Company is liable for the acts of the Individual Defendants (defined below) and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

## 1. Individual Defendants

13. Defendant Mariotti was Funko's Chief Executive Officer ("CEO") and a director of the Company at the time of the IPO. In his role as a Funko executive in the IPO working group, Mariotti reviewed, approved, and participated in making statements in the Registration Statement. Mariotti also reviewed, edited, and approved the road show PowerPoint presentation, road show talking points and script, and pitched investors at the road show. He signed, or authorized the signing of, the Registration Statement. Beyond his role as CEO, Mariotti was also motivated by the financial implications of a Funko IPO given his large financial stake in the Company. Immediately prior to the IPO, Mariotti beneficially owned over 3.9 million shares of Funko Class A common stock – 23.2% of the Company's Class A shares – and over 3.7 million shares of Funko Class B common stock – 15% of the Company's Class B shares. Mariotti held an equivalent percentage of voting control at the IPO and possessed over $46 million in marketable securities at the close of the IPO, not including unvested common units redeemable for an additional 484,538 shares of Funko Class A common stock. Additionally, Mariotti was motivated by the IPO's financial implications for both Funko and Funko's private investors, including the venture capital defendants herein.

14. Defendant Russell Nickel ("Nickel") was, at all relevant times, the Company's Chief Financial Officer ("CFO"), including his roles as the Principal Financial Officer and Principal Accounting Officer. In his role as a Funko executive in the IPO working group, Nickel reviewed, approved, and participated in making statements in the Registration Statement. Nickel also reviewed, edited, and approved the road show PowerPoint presentation, road show talking points and script, and pitched investors at the road show. He signed, or authorized the signing of, the Registration Statement. Beyond his role as CFO, Nickel was also motivated by the financial implications of a Funko IPO given his large financial stake in the Company. Immediately prior to the IPO, Nickel beneficially owned over 281,000 shares of Funko Class A common stock and over 124,000 shares of Funko Class B common stock; combined, he possessed over $3.3 million in marketable securities at the close of the IPO, not including unvested common units redeemable for

AMENDED CLASS ACTION COMPLAINT - 5
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

an additional 87,927 shares of Funko Class A common stock. Nickel also held Subordinated Promissory Notes, worth an aggregate principal amount of $120,000, plus interest, owned by Funko. Additionally, Nickel was motivated by the IPO's financial implications for both Funko and Funko's private investors, including the venture capital defendants herein.

15. Defendant Ken Brotman ("Brotman") was, at all relevant times, a director of Funko. Designated by Defendant ACON Investments as the Chairman of the Board of Directors of Funko (the "Board") at the time of the IPO, Brotman is also a founder and managing partner of ACON Investments, who, along with the other ACON Defendants (defined below), controlled Funko both before and after the IPO. He signed, or authorized the signing of, the Registration Statement. As a director of Funko Acquisition Holdings, L.L.C. ("FAH"), which was formed, in part, to create Funko and cause Funko's issuance of stock in the IPO, Brotman served at the favor of Defendant ACON Investments, as he had done on numerous other boards of ACON Investments-controlled companies. Brotman also controlled Funko as a member of the board of managers of ACON Funko Manager, LLC ("ACON Funko Manager"), which is the sole manager of, and exercises voting and investment power over, 15,467,557 common units of FAH held by multiple ACON Defendants. Brotman also controlled Funko as a member of the investment committee of ACON Equity GenPar, LLC ("ACON Equity GenPar"), which is the sole manager of, and exercises voting and investment power over, 7,949,169 shares of Class A common stock held by multiple ACON Defendants.

16. Defendant Gino Dellomo ("Dellomo") was, at all relevant times, a director of Funko. Designated by Defendant ACON Investments to be a member of the Board at the time of the IPO, Dellomo is also a director of ACON Investments. He signed, or authorized the signing of, the Registration Statement. As a director of FAH, which was formed, in part, to create Funko and cause Funko's issuance of stock in the IPO, Dellomo served at the favor of ACON Investments, as he had done on numerous other boards of ACON Investments-controlled companies. Dellomo also controlled Funko as a member of the board of managers of ACON Funko Manager, which is the sole manager of, and exercises voting and investment power over,

AMENDED CLASS ACTION COMPLAINT - 6
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

15,467,557 common units of FAH held by multiple ACON Defendants.  Dellomo also controlled Funko as a member of the investment committee of ACON Equity GenPar, which is the sole manager of, and exercises voting and investment power over, 7,949,169 shares of Class A common stock held by multiple ACON Defendants.

17.     Defendant Charles Denson ("Denson") was, at all relevant times, a director and member of the Funko Board.  Denson signed, or authorized the signing of, the Registration Statement.  At the time of the IPO, Denson beneficially owned 16,058 shares of Funko Class A common stock and 16,058 shares of Funko Class B common stock.

18.     Defendant Diane Irvine ("Irvine") was, at all relevant times, a director and member of the Funko Board.  Irvine signed, or authorized the signing of, the Registration Statement.

19.     Defendant Adam Kriger ("Kriger") was, at all relevant times, a director of Funko. Designated by Defendant ACON Investments to be a member of the Board at the time of the IPO, Kriger is also an executive partner at ACON Investments and chairman of the board of directors of Funko Holdings LLC ("Funko Holdings"), an entity in which FAH acquired a controlling interest in 2015.  He signed, or authorized the signing of, the Registration Statement.  FAH was formed, in part, to create Funko and cause Funko's issuance of stock in the IPO.  Kriger also served as a director of FAH, doing so at the favor of ACON Investments.  Kriger also controlled Funko as a member of the board of managers of ACON Funko Manager, which is the sole manager of, and exercises voting and investment power over, 15,467,557 common units of FAH held by multiple ACON Defendants.  Kriger also controlled Funko as a member of the investment committee of ACON Equity GenPar, which is the sole manager of, and exercises voting and investment power over, 7,949,169 shares of Class A common stock held by multiple ACON Defendants.  At the time of the IPO, Kriger beneficially owned 16,058 shares of Funko Class A common stock and 16,058 shares of Funko Class B common stock.

20.     Defendant Richard McNally ("McNally") was, at all relevant times, a director of Funko.  Designated by Defendant Fundamental Capital to be a member of the Board at the time of the IPO, McNally is a founder and partner at Fundamental Capital, and a member of the board of

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

directors of Funko Holdings, an entity in which FAH acquired a controlling interest in 2015.  FAH was formed, in part, to create Funko and cause Funko's issuance of stock in the IPO.  He signed, or authorized the signing of, the Registration Statement.  McNally also served as a director of FAH, doing so at the favor of Fundamental Capital.  McNally controlled Funko as one of two sole members of Fundamental Capital Partners, LLC ("Fundamental Capital Partners") and held voting interests in that entity.  Fundamental Capital Partners is the manager of Fundamental Capital, which holds 1,243,138 common units of FAH.  Additionally, Fundamental Capital is the general manager of Fundamental International, LLC ("Fundamental International"), which holds 5,686,538 common units of FAH.  Through his control of the Fundamental Defendants (defined below), McNally held over 6.9 million shares of Funko Class A common stock – 34.9% of the Company's Class A shares – and over 6.9 million shares of Funko Class B common stock – 27.7% of the Company's Class B shares – immediately prior to the IPO, and therefore controlled Funko.

21.     Defendants named in ¶¶13-20 above are collectively referred to herein as the "Individual Defendants."  Each signed, or authorized the signing of, the Registration Statement, and, as directors and/or executive officers, participated in the solicitation and sale of the Company's common stock to investors in the IPO for their own benefit and for the benefit of Funko.  Defendant Funko and the Individual Defendants are therefore strictly liable for the false and misleading statements in the Registration Statement.  Additionally, as key members of the IPO working group, and Funko executives who pitched investors in the road show to sell the IPO at the behest of the Company and Underwriter Defendants (defined below), the Defendants named in ¶¶13-14 above are sometimes collectively referred to herein as the "Executive Defendants."

### 2.     Underwriter Defendants

22.     Defendant Goldman Sachs served as an underwriter for the IPO.  Goldman Sachs has offices in Seattle, Washington.  In the IPO, Goldman Sachs agreed to purchase 3,283,898 shares of Funko common stock.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

23.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the IPO.  J.P. Morgan has offices in Seattle and Bellevue, Washington.  In the IPO, J.P. Morgan agreed to purchase 2,736,582 shares of Funko common stock.

24.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter for the IPO.  Merrill Lynch has offices in Seattle, Washington.  In the IPO, Merrill Lynch agreed to purchase 1,641,949 shares of Funko common stock.

25.     Defendant Piper Jaffray & Co. ("Piper Jaffray") served as an underwriter for the IPO.  Piper Jaffray has offices in Seattle, Washington.  In the IPO, Piper Jaffray agreed to purchase 826,271 shares of Funko common stock.

26.     Defendant Jefferies LLC ("Jefferies") served as an underwriter for the IPO.  In the IPO, Jefferies agreed to purchase 826,271 shares of Funko common stock.

27.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the IPO.  Stifel has offices in Seattle and Bellevue, Washington.  In the IPO, Stifel agreed to purchase 550,847 shares of Funko common stock.

28.     Defendant BMO Capital Markets Corp. ("BMO Capital") served as an underwriter for the IPO.  BMO Capital has offices in Seattle, Washington.  In the IPO, BMO Capital agreed to purchase 275,424 shares of Funko common stock.

29.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") served as an underwriter for the IPO.  In the IPO, SunTrust agreed to purchase 275,424 shares.

30.     Defendants named in ¶¶22-29 above are collectively referred to herein as the "Underwriter Defendants."  The Underwriter Defendants served as lead underwriters for the IPO, and collectively received over $8.5 million in fees and commissions for soliciting and selling Funko shares in the IPO.  Each underwriter is liable for the false and misleading statements in the Registration Statement pursuant to the Securities Act for the following reasons:

(a)     The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting IPOs of securities.  They served as the underwriters of the IPO and shared millions in fees collectively.  The Underwriter Defendants

AMENDED CLASS ACTION COMPLAINT - 9
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

determined that in return for their share of the IPO proceeds, they were willing to market and sell Funko stock in the IPO.  In the competition that determined the composition of the underwriting syndicate, the Underwriter Defendants promoted their ability to market Funko's stock.  Each Underwriter Defendant designated personnel to the IPO working group, including investment bankers, analysts, associates, and counsel, to market Funko's stock, and those personnel worked on and approved the content of Funko's Registration Statement and road show presentation.  The Underwriter Defendants arranged a multi-city road show prior to the IPO during which they, along with the Executive Defendants, met with potential investors and presented highly favorable information about the Company, its operations, and its financial prospects.  The Underwriter Defendants also promoted the IPO to their banks' own clients and sold shares to online brokerage account holders.

(b)      The Underwriter Defendants also demanded and obtained an agreement from Funko that Funko would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that Funko had purchased millions of dollars in directors' and officers' liability insurance.

(c)      Representatives of the Underwriter Defendants also assisted Funko and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of Funko, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Funko's operations and financial prospects.

(d)      In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Funko's management, top executives, and outside counsel and engaged in "drafting sessions" in advance of the IPO.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price range at

AMENDED CLASS ACTION COMPLAINT - 10
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

which Funko stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Funko would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Funko's management and top executives, the Underwriter Defendants knew, or should have known, of Funko's existing problems, as detailed herein.

(e)     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offer and sales of the Company's stock pursuant and/or traceable to the IPO, and solicited and sold in the IPO Funko common stock to Plaintiff and other members of the Class.

31.     At a minimum, the Underwriter Defendants were negligent in not knowing of the Company's undisclosed existing problems and plans and the materially untrue statements and omissions contained in the Registration Statement, as detailed herein.  Their negligent due diligence investigation was a substantial factor leading to the harm complained of herein.

### 3.     ACON and Fundamental Defendants

32.     Defendant ACON Investments is a private equity firm based in Washington, D.C., that controlled Funko both before and after the IPO.  As the Registration Statement admits, "[i]n October 2015, ACON [Funko Investors] acquired a controlling interest in [Funko]."  Shortly before the IPO, but after giving effect to a series of intermediate transactions, ACON Funko Investors was the beneficial owner of 100% of Funko's Class A common stock.  ACON Funko Investors controlled the predecessor to Funko immediately prior to the IPO, FAH, through entities it created that were (and are) members of FAH and beneficially owned 100% of Funko's Class A common stock and 42% of Funko's Class B common stock, immediately prior to the IPO.  FAH was formed, in part, to create Funko and cause Funko's issuance of stock in the IPO.  As set forth in FAH's Second Amended and Restated Limited Liability Company Agreement (the "FAH Agreement"), FAH "desire[d] to have Funko, Inc. . . . effect an initial public offering" and FAH

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

set out in great detail the steps to be taken to effect the IPO in the FAH Agreement.  ACON Investments controlled Funko through the directors identified above that it designated to serve at its benefit.  ACON Investments also controlled ACON Funko Manager, which is the sole manager of, and exercises voting and investment power over, the common units of FAH held by ACON Funko Investors and ACON Funko Investors Holdings 1, LLC ("ACON Funko Investors Holdings 1"), 10,495,687 and 4,971,870 common units, respectively.  Additionally, ACON Investments controlled ACON Equity GenPar, which is the sole manager of, and exercises voting and investment power over, the Funko Class A common stock held by ACON Funko Investors Holdings 2, LLC ("ACON Funko Investors Holdings 2") and ACON Funko Investors Holdings 3, LLC ("ACON Funko Investors Holdings 3"), 2,096,368 and 5,852,801 shares, respectively.  ACON Investments, ACON Funko Investors, and all other ACON-related funds or entities identified in this ¶32 are sometimes collectively referred to herein as the "ACON Defendants."

33.     Defendant Fundamental Capital is a private equity firm based in San Francisco, California, that is managed by Fundamental Capital Partners and is itself the general manager of Funko International, LLC ("Funko International"), a Funko affiliate.  Funko International holds 5,686,538 common units of FAH.  Fundamental Capital holds 1,243,138 common units of FAH and nominated Defendant McNally to be a director and member of the Board at the time of the IPO.  Immediately prior to the IPO, Fundamental Capital, Fundamental Capital Partners, and Funko International collectively controlled 34.9% of Funko's Class A common stock and 27.7% of Funko's Class B common stock.  Fundamental Capital, Fundamental Capital Partners, and all other Fundamental-related funds, entities, or individuals identified in this ¶33 are sometimes collectively referred to herein as the "Fundamental Defendants."

34.     Funko, the Individual Defendants, Executive Defendants, Underwriter Defendants, ACON Defendants, and Fundamental Defendants, as defined in ¶¶11-33 above, are collectively referred to herein as the "Defendants."

35.     The ACON Defendants, Fundamental Defendants, and Defendant Mariotti also possessed the power to influence and control Funko immediately prior to the IPO and cause the

AMENDED CLASS ACTION COMPLAINT - 12
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

IPO to be effected, as shown by their ability to secure, in advance of the IPO, post-IPO control of the Company through a Stockholders Agreement.  This is admitted in the Registration Statement, which states, "we [are] a 'controlled company' within the meaning of the Nasdaq rules," and explains the reason for the admission is that "[p]ursuant to the terms of the Stockholders Agreement, the ACON [Defendants], Fundamental [Defendants], and [Defendant] Mariotti, . . . after the consummation of this offering will, in the aggregate, have more than 50% of the voting power for the election of directors[.]"

36.    Additionally, Funko adopted a dual class share voting structure that allowed the ACON and Fundamental Defendants to maintain voting control even with a diminished economic interest in the Company.  According to the Registration Statement, following the IPO, outside Class A shareholders in the Company would have 44.6% of the economic interest in Funko, but only 21.6% of its voting interest.  The remainder of the voting interest would be held by the ACON and Fundamental Defendants, as well as certain other parties, by way of their ownership of voting Class B stock, which does not have any economic interest in the Company.  Moreover, the ACON Defendants would hold 12.9 million Class A shares, representing 55.4% of the economic interest in Funko.

37.    Under the control of the ACON and Fundamental Defendants, Funko paid these private equity firms more than $100 million in fees, special dividends, earn-out payments, and other financial arrangements and used debt to finance much of these payments.  As a result, the debt load of the Company increased significantly in the years leading up to the IPO.  For example, the total debt load of Funko's predecessor entity increased from approximately $217.8 million, as of December 31, 2016, to approximately $339.1 million, as of June 30, 2017, an increase of over 55% in only six months.  Funko stated that it would use the proceeds from the IPO to pay off a portion of this debt.

## SUBSTANTIVE ALLEGATIONS

38.    This Complaint asserts strict-liability and negligence claims under §§11 and 12(a)(2) of the Securities Act against all of the Defendants for material misstatements in the

AMENDED CLASS ACTION COMPLAINT - 13
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

Registration Statement and Prospectus issued in connection with the IPO.  Additionally, this Complaint asserts control person claims under §15 of the Securities Act against the Individual, ACON, and Fundamental Defendants.

39.     Each Defendant violated §11 of the Securities Act, 15 U.S.C. §77k, when they issued, or caused to be issued, the Registration Statement, which contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

40.     Each Defendant violated §12(a)(2) of the Securities Act, 15 U.S.C. §77*l*, when they issued, or caused to be issued, the Prospectus, which was incorporated into and formed part of the Registration Statement and included untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements therein not misleading.

41.     The Individual, ACON, and Fundamental Defendants were "controlling persons" within the meaning of §15 of the Securities Act, 15 U.S.C. §77o, and are therefore jointly and severally liable with and to the same extent as the "controlled person[s]" alleged herein.

42.     The Securities Act claims described above specifically exclude any allegations of fraud, knowledge, recklessness, or scienter, do not "sound in fraud," and are based solely on strict liability and negligence.

A.      **Background**

43.     Defendant Funko is a consumer products company.  It develops licensing relationships with content providers – including, for example, popular television and movie brands, like HBO, which produces Game of Thrones, and Disney, which produces the Marvel comic book movies – and creates figurines and products based on pop culture references from those licenses. The Registration Statement states that Funko's goal is to "create whimsical, fun and unique products that enable fans to express their affinity for their favorite 'something'—whether it is a movie, TV show, video game, musician or sports team."  The Company's most familiar products are its Pop! Collectibles – dolls based on popular culture characters and icons, recently including characters from Disney's new Star Wars films.

44.    Founded in 1998, Funko's first products focused on "nostalgic bobble head figures."

45.    In 2005, Funko was acquired by an investment group led by Mariotti, who became CEO at that time and has continued to serve as such through the events described herein.

46.    In October 2015, ACON Funko Investors, through FAH, an entity formed in contemplation of the transaction, acquired a controlling interest in Funko Holdings and its subsidiary, Funko, giving ACON Investments, which controls ACON Funko Investors, control of the Company.

47.    As of the November 2017 IPO, Funko's private equity owners had extracted over $100 million in cash from the Company, leaving Funko saddled with a debt load of almost $340 million.  Funko stated that it would use the proceeds from the IPO to pay off a portion of this debt.

48.    As of 2017, the Company had active licensing agreements with 112 licensors and over 5,000 products.

49.    Domestically, Funko primarily sells its products to specialty retailers, mass-market retailers, and e-commerce sites.[1]  Internationally, the Company sells its products directly to similar retailers, primarily in Europe, through its subsidiary Funko UK, Ltd. ("Funko UK"), which Funko formed in December 2016 in connection with the January 2017 acquisition of Underground Toys Limited ("Underground Toys"), a manufacturer and distributor of licensed products based in the United Kingdom.  Funko also sells its products to distributors for sale to small retailers in the United States and in certain countries internationally, typically where they do not currently have a direct presence.  The Company also sells certain of its products directly to consumers through its e-commerce business and, to a lesser extent, at specialty licensing and comic book shows, conventions, and exhibitions in cities throughout the United States, including Comic-Con events.

50.    The Underground Toys acquisition was one of three acquisitions Funko completed in 2017.  The Registration Statement makes clear that the Company considers acquisitions a core

---

[1]    In August 2017, Funko opened its first brick-and-mortar store at its Everett, Washington, headquarters. Gwendolyn Elliott, *Check Out 5 of Funko's Most Popular Washington Figurines Ahead of Everett Store Opening*, SEATTLE MAG. (Aug. 2017), https://www.seattlemag.com/arts-and-culture/check-out-5-funkos-most-popular-washington-figurines-ahead-everett-store-opening.

AMENDED CLASS ACTION COMPLAINT - 15
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

1  component of its business strategy as Funko looks to reach new consumers and open up new

2  markets.  In June 2017, Funko acquired Loungefly, LLC, a designer of licensed pop culture fashion

3  handbags, small leather goods, and accessories.  And, in November 2017, the Company acquired

4  A Large Evil Corporation Limited, an animation studio based in the United Kingdom.

5  **B.     Materially False and Misleading Statements Issued During the Class Period**

6  51.     On or around October 6, 2017, the Company filed a registration statement with the

7  SEC on Form S-1 for the IPO, which was declared effective on November 1, 2017 (together, with

8  all amendments, the "Registration Statement").  The next day, the Company filed a free writing

9  prospectus for the IPO on Form FWP.  On November 3, 2017, Funko filed a prospectus for the

10  IPO on Form 424B4 (the "Prospectus"), which was incorporated into and formed part of the

11  Registration Statement.  Together, the Registration Statement and Prospectus were used to sell to

12  the investing public approximately 10.4 million shares of Funko Class A common stock in the IPO

13  at $12.00 per share.

14  52.     The Registration Statement was signed and/or authorized by the Individual

15  Defendants.

16  53.     The Registration Statement was negligently prepared and, as a result, contained

17  untrue statements of material fact, omitted material facts necessary to make the statements

18  contained therein not misleading, and failed to make adequate disclosures required under the rules

19  and regulations governing the preparation of such documents.

20  54.     The Registration Statement mislead investors about and/or omitted to disclose to

21  the investing public key facts by: (1) utilizing misleading metrics and graphics regarding Funko's

22  past and current growth and the Company's future earnings trajectory; (2) overstating the

23  Company's net intangible assets and intellectual property; (3) falsely claiming that Funko had a

24  "diverse" portfolio, "nimble" production model, and "passionate" fan base that would allow the

25  Company to weather any downturn in the collectible toy market and meet or exceed the Company's

26  sky-high growth projections; (4) omitting from the Registration Statement key facts about Funko's

27  slowing sales and excess inventory; and (5) failing to disclose to investors ***known*** trends that were

28

AMENDED CLASS ACTION COMPLAINT - 16
(No. 2:18-cv-00812 RSM)

impacting the Company at the time of the IPO and failing to adequately describe the risks Funko faced in the "Risk Factor" section, a violation of Items 303 and 503 of SEC Regulation S-K, 17 C.F.R. §§229.303(a)(3)(ii) and 229.503, respectively.

55.     All told, the Registration Statement did not present investors with an accurate view of the Company and prevented them from making an informed decision at the same time Funko asked them for their trust and investment.

**C.      Past, Current, & Future Growth**

56.     The Registration Statement utilized misleading metrics and graphics regarding Funko's past, current, and future earnings and growth trajectory and thereby materially misled the investing public.

57.     First, the Registration Statement discussed the Company's "strong growth," stating, in relevant part:

> Our financial performance reflects the strong growth of our business. From 2014 to 2016, *we expanded our net sales, net income and Adjusted EBITDA at a 100%, a 17% and an 86% compound annual growth rate, or CAGR, respectively.* We achieved this growth without reliance on a singular "hit" property as no single property accounted for more than 15% of annual net sales during that period. We believe our strong growth and profitability reflect our pop culture consumer products leadership.

[Emphasis added.]

58.     This statement communicated the misleading impression that Funko's financial performance was strong and that the Company was experiencing, and would continue to experience, steady and robust growth.  The Registration Statement bolstered the misleading statement with the following graphic:

AMENDED CLASS ACTION COMPLAINT - 17
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600



59.     The big upward-pointing arrow focuses the reader's attention on a highly misleading statistic: despite the Company's claims that Funko had an average 86% compounded annual earnings growth rate in the previous two years, net income fluctuated significantly over the course of 2015 and 2016; the Company reported $27.5 million in net income in the so-called "Predecessor 2015 Period" of January 1, 2015 through October 30, 2015, before the ACON Investments acquisition, followed by $15.6 million in **net losses** in the so-called "Successor 2015 Period" of October 31, 2015 through December 31, 2015.  Following a year in which Funko earned $26.9 million in net income, the Company's balance sheet once again **turned sharply negative** in the first half of 2017 when the Company reported another staggering net loss, this time totaling over over $10 million.  At the time of the IPO, Funko's earnings trajectory was anything but steady and upward.  However, by giving investors the impression that the Company's operations were successful, and that its bottom line was continuously improving, the Registration Statement mislead the market and omitted material information.

60.     Instead of giving the investing public a clear sense of the Company's financial performance, Funko toyed with the market and produced a Registration Statement that a November 2, 2017, *Bloomberg* article described as "the latest example of fun-house accounting on Wall Street":

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

*In Funko's IPO prospectus, in a chart with a big arrow pointing up, the company says that an important measure of its income, which it uses to determine the success of its operational strategies, rose by an average of 86 percent in its past two full years.* The actual bottom line, though, was up an average of just 16 percent in 2015 and 2016 and has turned negative lately. Funko lost just more than $10 million in the first half of this year. *How the toymaker gets a loss of $10 million to reflect back as an 86 percent earnings increase is the latest example of fun-house accounting on Wall Street.*[2]

[Emphasis added.]

61.     In fact, the article pointed out in its own graphic that over the course of the prior three years, Funko's net income and measure of adjusted earnings had radically departed from each other:



62.     This departure is attributed to the Company's reliance on its own calculation of adjusted EBITDA:

The question is how profitable the $10 figures are, if at all. Funko arrives at its 86 percent compounded annual earnings growth rate by focusing on a figure that more and more companies point their shareholders to called adjusted Ebitda, which excludes a number of costs. Each company computes the figure slightly differently, which is why many accounting experts hate it, but companies like Funko say it is a better measure of their operations. Let's see.

* * *

Funko says it had $97 million in adjusted Ebitda earnings in 2016, up from just $28 million in 2014, an increase of $69 million. How did it manage that increase? Two

---

[2]     Stephen Gandel, *Funko Extends Playtime to Its Accounting*, BLOOMBERG OP. (Nov. 2, 2017, 10:17 AM EDT), https://www.bloomberg.com/gadfly/articles/2017-11-02/funko-ipo-maker-of-dolls-extends-playtime-to-accounting.

years ago, Funko was sold to a private equity firm. Funko says acquisitions are a one-time expense, even though it says it plans to do more deals in the future. Nonetheless, exclude those costs, and the company's adjusted Ebitda jumps nearly $25 million. ***Funko also contends it has intellectual property worth $250 million.*** That's odd for a company whose main products are based on others' intellectual property. Anyway, the company stepped up write-offs of that intellectual property last year. ***Depreciation costs rose $19.5 million. But Funko says that cost is not part of its operations and excludes it from its adjusted Ebitda, causing that figure to rise once again.*** Funko has also piled on debt in the past two years, in part because of its private equity ownership. ***Interest expense rose $14.5 million, which is also excluded from adjusted Ebitda.*** You get the picture; the higher cost is reflected back as better earnings once it's excluded.

***The result, just $7 million, or 10 percent, of Funko's $69 million increase in adjusted Ebitda -- which led to that 86 percent increase in growth from 2014 to 2016 -- was from actual earnings growth. The other 90 percent came from higher costs that the company says investors should just ignore. Funko Pop! dolls are based on fantasy. Its accounting shares a similar trait.***

[Emphasis added.]

63.     By failing to include (1) acquisition costs; (2) depreciation costs; and (3) interest expenses – three major expenses that companies routinely face, and in the case of acquisition costs, a major expense that plays a large role in the Company's business strategy – in Funko's big-ticket indicator of financial performance, the Company materially misrepresented the state of its financial health and mislead the market.  Instead, the Company dressed up $7 million in actual earnings growth and tried to sell it to the investing public as a $69 million increase, a fantastical 86% jump in adjusted EBITDA.

### D.     Net Intangible Assets & Intellectual Property

64.     The Registration Statement also represented that Funko had significant intangible assets, as reflected in the following chart (in thousands):

| | December 31, 2016 | | |
| --- | --- | --- | --- |
| | Gross Carrying Amount | Accumulated Amortization | Intangible Assets, Net |
| Intangible assets subject to amortization | | | |
| Intellectual property | $ 114,411 | $    (6,674) | $107,737 |
| Trade names | 81,358 | (4,746) | 76,612 |
| Customer relationships | 63,129 | (3,682) | 59,447 |
| Balance as of December 31, 2016 | $258,898 | $   (15,102) | $243,796 |

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

|  | December 31, 2015 | | |
|---|---|---|---|
|  | Gross Carrying Amount | Accumulated Amortization | Intangible Assets, Net |
| Intangible assets subject to amortization | | | |
| Intellectual property | $ 114,411 | $        (953) | $ 113,458 |
| Trade names | 81,358 | (678) | 80,680 |
| Customer relationships | 63,129 | (526) | 62,603 |
| Balance as of December 31, 2015 | $258,898 | $      (2,157) | $256,741 |

For the year ended December 31, 2016, the Successor 2015 Period, and the Predecessor 2015 Period, amortization of intangible assets was $12.9 million, $2.2 million, and $1.4 million, respectively. Estimated amortization expense will be $12.9 million for each of the next five years.

There was no impairment of goodwill and intangible assets for the year ended December 31, 2016 or for the Successor 2015 Period and the Predecessor 2015 Period.

65.    By representing that Funko had more than $243 million in net intangible assets, subject to amortization as of December 31, 2016, including more than $114 million in intellectual property assets, the Registration Statement mislead investors as to the true state of the Company's intangible assets.  Additionally, the Company further mislead investors by claiming that Funko's net intangible assets had increased to approximately $258 million and its goodwill to $106.5 million by June 30, 2017.  Such claims about the Company's net intangible assets mislead investors because the Company largely relied on intellectual property of third-party content providers. Moreover, at the time of the Registration Statement, the Company had excess inventory, which shows that the value of Funko's intellectual property rights, trade names, and customer relationships was actually worth less than what the Company had led investors to believe.

**E.    Funko's "Diverse" Portfolio, "Nimble" Production Model, and "Passionate" Fan Base**

66.    As detailed below, the Registration Statement a made series of materially false and misleading representations about Funko's ability to weather a downturn in the collectible toy market and grow as a company.  Specifically, the Defendants pointed to the Company's supposedly "diverse" portfolio, allegedly "nimble" production model, and purportedly "passionate" fan base in support of its claimed trajectory as a company.  However, these claims were materially false and misleading because the Registration Statement failed to disclose that: Funko's profits and growth were not as positive as the Company represented; Funko's business model and customer base had not insulated it from adverse industry, sales, and earnings trends;

AMENDED CLASS ACTION COMPLAINT - 21
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

and as a result, Defendants' statements in the Registration Statement regarding Funko's business, operations, and prospects materially mislead the investing public.

67.     First, the Registration Statement represented that the Company's "diverse" portfolio[3] and "unique" production and design model insulated it from adverse trends in the toy and retail industry, stating, in relevant part:

> **Content Providers**: We have strong licensing relationships with many established content providers, such as Disney, HBO, LucasFilm, Marvel, the National Football League and Warner Brothers. We strive to license every pop culture property that we believe is relevant to consumers. *We currently have licensed over 1,000 properties, which we believe represents one of the largest portfolios in our industry, and from which we can create multiple products based on each character within those properties.* Content providers trust us to create unique, stylized extensions of their intellectual property that extend the relevance of their content with consumers through ongoing engagement, helping to maximize the lifetime value of their content. We believe we have benefited from a trend of content providers consolidating their relationships to do more business with fewer licensees. *Our track record of obtaining licenses from content providers, together with our proven ability to renew and extend the scope of our licenses, demonstrates the trust content providers place in us*.
>
> *    *    *
>
> We have developed a nimble and low-fixed cost production model. The strength of our in-house creative team and relationships with content providers, retailers and third-party manufacturers allows us to move from product concept to pre-selling a new product in as few as 24 hours. We typically have a new figure on the store shelf between 110 and 200 days and can have it on the shelf in as few as 70 days. *As a result, we can dynamically manage our business to balance current content releases and pop culture trends with content based on classic evergreen properties, such as Mickey Mouse or classic Batman. This has allowed us to deliver significant growth while lessening our dependence on individual content releases*.

[Emphasis added.]

68.     Next, the Registration Statement stated that the Company's diversification drove "*Revenue Visibility and Growth*[,]" while "lessening [its] dependence on individual content releases[,]" stating, in relevant part:

---

[3]      One common trope repeated by the Registration Statement is Defendant Mariotti's vision of success, which includes a "diverse portfolio": Mariotti "recognized the value in building a diverse portfolio of licenses and we began assembling a library of licenses, including licenses with Disney and LucasFilm."

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

*Dynamic Business Model Drives Revenue Visibility and Growth*

Our business is diversified across content providers and properties, product categories, and sales channels. As a result, **we can dynamically manage our business to capitalize on pop culture trends, which has allowed us to deliver significant growth while lessening our dependence on individual content releases**. Our content provider relationships are highly diversified. We generated only approximately 8% and 15% of net sales from our top property for the six months ended June 30, 2017 and the year ended December 31, 2016, respectively, and the portion of our net sales for the six months ended June 30, 2017 and the year ended December 31, 2016 attributable to our top five properties was 27% and 36%, respectively. Our products are balanced across our licensed property categories. In 2016, we generated approximately 43% of net sales from classic evergreen properties, approximately 24% from movie release properties, approximately 20% from current video game properties and approximately 12% from current TV properties. We have visibility into the new release schedule of our content providers and our expansive license portfolio allows us to dynamically manage new product creation. This allows us to adjust the mix of products based on classic evergreen properties and new releases, depending on the media release cycle. In addition, we sell our products worldwide through a diverse group of sales channels, including specialty retailers, distributors, mass-market retailers, e-commerce sites and direct-to-consumer.

[Emphasis added and in original.]

69.     Third, the Registration Statement stated that Funko's "passionate" customer base drove growth and would continue to do so:

With our unique style, expertise in pop culture, broad product distribution and highly accessible price points, **we have developed a passionate following for our products that has underpinned our growth.** We believe we sit at the nexus of pop culture—content providers value us for our broad network of retail customers, retailers value us for our broad portfolio of licensed pop culture products and pop culture insights, and consumers value us for our distinct, stylized products and the content they represent. We believe our innovative product design and market positioning have disrupted the licensed product markets and helped to define today's pop culture products category.

\* \* \*

**We believe we drive meaningful traffic to our retail customers' stores because our products have their own built-in fan base, are refreshed regularly creating a "treasure hunt" shopping experience for consumers, and are often supplemented with exclusive, limited-time products that are highlighted on social media. We believe these merchandising strategies create a sense of urgency with consumers that encourages repeat visits to our retail customers.**

\* \* \*

**Our products are generally priced under $10, which allows our diverse consumer base to express their fandom frequently and impulsively**. We continue to introduce innovative products designed to facilitate fan engagement at different price points

AMENDED CLASS ACTION COMPLAINT - 23
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

and styles. In addition, our fans routinely express their passion for our products and brands through social media and live pop culture events, such as Comic-Con or Star Wars Celebration.

[Emphasis added.]

70.     The Registration Statement also listed the Company's strategies, which Funko "believe[d] w[ould] drive substantial future growth[,]" including: (1) "*Increase Sales with Existing Retail Customers*"; (2) "*Add New Retail Customers and Expand Into New Channels*"; (3) "*Broaden Our Product Offerings*"; (4) "*Expand Internationally*"; and (5) "*Leverage the Funko Brand Across Multiple Channels*."

71.     The Registration Statement's claims about the Company's portfolio, production, fan base, and business strategy were materially misleading because they did not, in fact, insulate Funko from downtrends in the collectible toy market.  First, as previously noted, Funko's bottom line turned sharply negative at the end of 2015 and the Company once again reported a significant net loss in the first half of 2017.  Second, only weeks after the IPO, it was revealed that Funko's sales channels were overloaded with inventory, as of the time of the IPO, including in the Company's flagship Pop! product line.  This fact led Defendant BMO Capital to downgrade Funko's earnings outlook and valuation just one month after the IPO.  Third, as the BMO Report (defined below) also noted, Funko was also increasing markdowns, which constituted another blow to the Company's bottom line.  This accounting failure only further masked Funko's struggles at the time of the IPO.  Despite the Company's claims to the contrary, Funko's supposedly "diverse" portfolio, "nimble" production model, and "passionate" fan base could not insulate Funko from any downturn in the market.  However, instead of disclosing the truth to the investing public, Funko chose to mislead the market into believing that its portfolio, production model, and fan base would ensure the Company's success at the very same time Funko was experiencing a downturn.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

1

**F.      Slowing Sales and Excess Inventory**

2      72.      Included in the Registration Statement's multiple pages of numerous "Risk

3   Factors" – possible factors that, were they to occur, Funko's "financial condition and results of

4   operations could be materially and adversely affected" – is a generic warning that:

5           *if* demand or future sales do not reach forecasted levels, we *could* have excess

6           inventory that we may need to hold for a long period of time, write down, sell at
            prices lower than expected or discard. If we are not successful in managing our

7           inventory, our business, financial condition and results of operations could be
            adversely affected.

8   [Emphasis added.]

9      73.      This statement is misleading and/or omits material information because the above

10  scenario, in which the Company's slowing sales leads to excess inventory, had *already* occurred.

11  Instead of warning investors that a build-up of inventory *could* harm the Company's bottom line,

12  the Defendants had a duty to disclose that the forewarned harm had *already* come to fruition and

13  was *currently* impacting the Company's "financial condition and results of operations" at the time

14  of the IPO.  By dressing up a current real issue as a potential future problem, Funko's Registration

15  Statement mislead the investing public.

16     74.      Indeed, shortly after the IPO, on December 19, 2017, BMO Capital issued an

17  analyst report (the "BMO Report") that cited the Company's excess inventory as one of the prime

18  reasons it downgraded Funko's common stock:

19          We have now had two weeks to digest the company's 3Q financial release. And

20          since then, we believe performance has deteriorated relative to expectations.

21          As the critical holiday season has progressed it has become increasingly clear that
            the overall toy and collectibles industries have performed below our initial

22          expectations. We think U.S. retail sales of toys (and pop culture collectibles) are
            running down low-to-mid-single digits percent for the season.

23          *In our recent channel checks we have noticed a build-up of Funko's inventory*

24          *levels at retail, particularly of the company's flagship Pop! collectibles line. We*
            *have already begun to see clearance sales, something Funko's core collector*

25          *customers are very sensitive to.*

26          Secondary market prices for Pop! collectibles are up over the last six months,
            though we began to see a decline in the values in mid-November, which we

27          consider a warning sign for the health of this collectibles market.

28

AMENDED CLASS ACTION COMPLAINT - 25
(No. 2:18-cv-00812 RSM)

***Thus, we have moderated our estimates and fear there could still be risk to further downward revision.*** To account for this additional risk, we are lowering the multiples with which we use to value Funko shares to a 12x P/E multiple (from 13.5x) on our 2019 EPS estimate of $0.60 (from $0.75). We are reducing our EV/EBITDA multiple to 5.5x (from 6.0x) our 2019 EBITDA estimate of $109 million (from $121 million)[.][4]

[Emphasis added.]

75.     Besides directly contradicting the Registration Statement's assertions about the Company's "dynamic" business model, "diverse" portfolio, "nimble" production model, and "passionate" fan base that would allow the Company to weather any downturn in the collectible toy market, the BMO Report exposed the Company's misleading statements about Funko's so-called "Risk Factors" and revealed to the investing public that the Registration Statement omitted known facts about the Company's bloating inventory.  In fact, as of the IPO, the Company had warehouses full of excess and outdated inventory (referred to in industry parlance as "dead stock"), which the Defendants had full knowledge of.  This failure to disclose ***known*** trends also constituted a violation of multiple SEC regulations.

**G.     Items 303 & 503**

76.     Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303"), requires Defendants to "[d]escribe any ***known*** trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations."  [Emphasis added.]  Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503 ("Item 503"), requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and that each risk factor "adequately describes the risk."

77.     By failing to disclose that, at the time of the IPO, the Company was experiencing adverse sales and earnings trends far below a true 86% CAGR and that Funko had overloaded its sales channels with excess inventory, the Company's Registration Statement violated Item 303 because these ***known***, and yet still undisclosed, facts would (and did) have an unfavorable impact

---

[4]     Johnson, Gerrick L. (2017, Dec. 17). *Downgrading to Market Perform; Collecti-BULL Market Slowing*. Retrieved from Westlaw database.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

on the Company's sales, revenues, and income from continuing operations.  In fact, not only did these factors impact Funko in the future, but they also impacted the Company's bottom line *at the time of the IPO*.  Indeed, Defendants' failure to disclose the ***already occurring known*** trends rendered false and misleading certain of the Registration Statement's references to certain "risks" because these so called "risks" had already materialized before the IPO.

78.     Moreover, this failure also violated Item 503 because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in shares of Funko Class A common stock speculative or risky.  Adverse sales, declining earnings trends, and excess inventory, all of which were known to the Defendants, but not the investing public, made an investment in Funko's common stock a risky choice.  Instead of adequately disclosing these known risks and significant trends that impacted the Company before, during, and after the IPO, as the Company's statutory duty to disclose required, the Registration Statement mislead and/or omitted key facts and left the investing public to suffer the consequences.

**H.     Subsequent Disclosures**

79.     On November 2, 2017, Funko's first public day of trading, its stock price opened at $8.00 and closed at $7.07, representing a 41% decrease from the $12.00 IPO price.  Several news outlets reported this was due to risks associated with Funko's financial results and misleading accounting practices.

80.     As previously noted, on November 2, 2017, *Bloomberg* described Funko's IPO as "the latest example of fun-house accounting on Wall Street" and that the "IPO prospectus gives a lesson in make-believe."[5]  The *Bloomberg* article took aim at the Company's misleading metrics of financial success and future growth, particularly the supposed "86 percent compounded annual earnings growth rate," which, the article noted, shares a similar trait with its characters: both the CAGR and its toys "are based on fantasy."  While the Registration Statement claims that the Company earned $97 million in adjusted EBITDA in 2016, up from $28 million in 2014, the article

---

[5]     *See* n.2.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

accurately pointed out that only $7 million of the $69 million increase was due to actual earnings growth. Instead, the rest was due to accounting trickery by excluding: (1) acquisition costs as one-time expenses, which is not true because acquisitions played a major role in Funko's business and expansion strategy at the time of the IPO and was not merely a one-off (or even a two-off) event; (2) depreciation costs of its intellectual property; and (3) interest expenses paid to service its mounting debt.

81.     The *Bloomberg* article also raised the Registration Statement's accounting of $243 million in net intangible assets, including $114 in intellectual property assets, as of December 31, 2016. The article characterized these astronomically high figures as "odd for a company whose main products are based on others' intellectual property." In fact, these sky-high figures for the Company's net intangible assets and intellectual property were not merely "odd" – they are yet another example of Funko's Registration Statement misleading the public on a material issue.

82.     On November 2, 2017, the Puget Sound Business Journal, Funko's hometown business journal, panned the Everett, Washington-based toy company's IPO in an article, entitled "Funko shares drop during first day of trading in downsized IPO," noting, in part, the reduction in shares listed for sale:

> Everett toymaker Funko Inc. went public on Thursday, selling fewer shares than planned and for less.
>
> Funko planned to issue 13.3 million shares for between $14 to $16 per share. But instead Funko priced 10.4 million shares at $12 per share. Funko closed down 41 percent to around $7 per share.
>
> The IPO appears to show Funko (Nasdaq: FNKO) still has to convince Wall Street that it's different than other toy retailers.[6]

83.     That same day, Renaissance Capital, IPO research group which tracks and assesses IPOs, noted that Funko had the worst IPO "since June 2000"[7]:

---

[6]     Ashley Stewart, *Funko shares drop during first day of trading in downsized IPO*, PUGET SOUND BUS. J. (Nov. 2, 2017, 1:54 PM EDT), https://www.bizjournals.com/seattle/news/2017/11/02/as-funko-shares-fall-tour-the-head quarters.html.

[7]     *Funko plummets 41% in biggest IPO drop since 2000*, RENAISSANCE CAP. (Nov. 2, 2017), https://www.ren aissancecapital.com/IPO-Center/News/52250/Funko-plummets-41-in-biggest-IPO-drop-since-2000.

AMENDED CLASS ACTION COMPLAINT - 28
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

Pop culture figurine maker **Funko** (FNKO) fell 41% on Thursday to close at $7.07. That gave it the worst first-day return for an IPO in 17 years, since June 2000 financial services IPO eChapman.com (-43%). Funko priced a downsized IPO at $12 per share, below its range of $14-$16, to raise $125 million at a market cap of $586 million. Investors were likely concerned over slowing organic sales growth and contracting margins in a hit-driven industry.

Funko's flop is particularly unusual for an IPO led by Goldman Sachs. Goldman-led deals over the past five years average a stellar first-day pop of 25%. Fewer than one-in-five finish the first day below issue.

| Bobblehead Blow-Up: Funko IPO Has Biggest Drop in 17 Years | | | |
|---|---|---|---|
| | **Trade Date** | **Business** | **First-day Return** |
| 1. Funko | 11/02/17 | Pop culture figures | -41.1% |
| 2. MOL Global | 10/09/14 | Malaysian e-payments | -34.9% |
| 3. DOV Pharmaceutical | 04/25/02 | Insomnia biotech | -33.1% |
| 4. ORBCOMM | 11/02/06 | Communication satellites | -29.5% |
| 5. Valeritas | 03/23/17 | Insulin delivery device | -28.8% |
| 6. Allena Pharmaceuticals | 11/02/17 | Kidney disease biotech | -28.7% |
| 7. Viggle | 04/25/14 | TV show rewards app | -28.1% |
| 8. Aileron Therapuetics | 06/29/17 | Cancer biotech | -28.0% |
| 9. Macrocure | 07/31/14 | Wounds biotech | -27.5% |
| 10. vTv Therapeutics | 07/30/15 | Alzheimer's biotech | -27.4% |
| Source: Renaissance Capital | | | IPO data from 11/2/00 - 11/2/17 |

84.     In its weekly IPO recap written the following day, Renaissance Capital added that in addition to fears about the sustainability of the Company's projected growth, "investors were likely turned off by insider dividends funded with high-coupon debt."[8]

85.     On November 2, 2017, the *Seattle Times* also chimed in to note the Company's struggles, highlighting the fact that "**[s]hares of the Everett-based pop-culture collectibles company fell more than 40 percent after its initial public offering despite being priced below the expected level.**"[9]   The article added that Funko's debt may have also contributed to its historically poor IPO performance: "The company has amassed considerable debt, partly due to

[8]     *US IPO Weekly Recap: No Pop! for Funko in 9 IPO week*, RENAISSANCE CAP. (Nov. 3, 2017), https://www.renaissancecapital.com/IPO-Center/News/52269/US-IPO-Weekly-Recap-No-Pop!-for-Funko-in-9-IPO-week-.

[9]     *Funko stock plunges in 'worst first-day return for an IPO in 17 years'*, THE SEATTLE TIMES (Nov. 2, 2017, 2:10 PM; updated Nov. 3, 2017, 7:09 AM), https://www.seattletimes.com/business/funko-stock-plunges-in-ipo-shocker/.

AMENDED CLASS ACTION COMPLAINT - 29
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

$98 million in dividends paid to its private-equity owners. Much of the IPO proceeds were to have gone to pay down those liabilities, which totaled $339 million at the end of June, up from $217 million in December." "Those numbers may have discouraged potential buyers[,]" the article explained.

86.     On November 2, 2017, Yahoo! Finance also published an article, entitled "Shares of bobblehead maker Funko plummet after public debut," questioning the Company's readiness to go public.[10]  The article states, in relevant part:

> Pop culture licensing company Funko (FNKO) went public on Thursday.
>
> Funko began trading at $8 per share at 11:35 a.m. ET, 33% below the initial public offering price of $12, which was already reduced from the previously expected $14 to $16 range.
>
> As of around 2:00 p.m. ET, shares traded in a range of $6.99 and $8.35.
>
> The Everett, Washington-based bobblehead and plush doll manufacturer Funko decked out Times Square with a larger-than-life Ironman and Hulk to get the buzz going.
>
> CEO Brian Mariotti was scheduled to do an interview with Yahoo Finance's live show, Midday Movers, but canceled a few minutes after trading started.
>
> **Underlying trouble**
>
> * * *
>
> ***Funko has been a private company for the last 19 years and was sold to a private equity firm two years ago. Its disappointing opening Thursday perhaps confirms that it still wasn't ready for its public debut.***

[Emphasis added.]

87.     On November 3, 2017, the *New York Times* published an article, entitled "How Not to Price an I.P.O.: A Couple of Lessons From This Week," stating it was "questionable whether selling giant-headed dolls of pop-culture figures is a sustainable business."[11]  The article further states, in relevant part:

---

[10]     Melody Hahm, *Shares of bobblehead maker Funko plummet after public debut*, Yahoo! News (Nov. 2, 2017), https://finance.yahoo.com/news/shares-bobblehead-maker-funko-plummet-public-debut-180744013.html.

[11]     Robert Cyran, *How Not to Price an I.P.O.: A Couple of Lessons From This Week*, N.Y. Times (Nov. 3, 2017), https://www.nytimes.com/2017/11/03/business/dealbook/how-not-to-price-an-ipo-a-couple-of-lessons-from-this-week.html.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

*Wall Street has just received a reminder that initial public offerings are not child's play. On Thursday, Goldman Sachs, JPMorgan Chase and Bank of America presided over a 41 percent drop in shares of Funko, the maker of pop-culture dolls, for the worst first-day showing in 17 years.*

\* \* \*

Trying to gauge investor demand for such companies can be difficult. The definition of what is considered risky tends to shrink as animal spirits rise, and vice versa. For example, there were no biotech I.P.O.s for a year and a half during the financial meltdown nearly a decade ago. Investors had no interest in companies without profit or revenue. That's not the case this year, with over 30 biotech offerings so far.

Bankers are well paid to find the right price. Companies don't want to mess up their public debut, so they tend to prefer the top Wall Street firms and can pay hefty fees.

*Funko is not the sort of firm that investors would clamor to buy when markets were weak. Its private-equity owner had extracted more than $100 million in cash from the firm since it went private in 2015, leaving its debt at over $200 million. Funko also lost money in the first six months of the year. A robust holiday season could produce a profit, but it is also questionable whether selling giant-headed dolls of pop-culture figures is a sustainable business.*

*The fact that bankers cut the amount of shares offered and reduced the price from the indicated range, yet the stock still suffered a vertiginous drop, could simply indicate they got demand wrong. Then again, the poor performance that both Funko and Allena [another company that went public on the same day] suffered could signal something bigger: investors' receding appetite for risk.*

[Emphasis added.]

88.     As previously noted, on December 19, 2017, just one month after Funko's IPO, BMO Capital downgraded the Company's stock and lowered the multiples used for its valuation, noting in particular Funko's build-up of inventory levels and use of markdowns.[12]   The BMO Report also warned that the Company would likely face further headwinds due to a slowdown in the collectible toy market, exposing Defendants' claims about the Company's ability to weather a market downturn as material misstatements.

89.     On December 21, 2017, Funko Class A common stock closed at $6.00 per share, representing a 50% decline from Funko's IPO price.

---

[12]     *See* n.4.

1

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

90.      Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons, other than Defendants, who purchased, or otherwise acquired, publicly traded securities of Funko pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the IPO and were damaged thereby (the "Class").  Excluded from the Class are Defendants, officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which the officers and directors of the Company have, or had, a controlling interest.

91.      The members of the Class are so numerous that joinder of all members is impracticable.  Since the IPO, the Company's securities were actively traded on the Nasdaq.  While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands, of members in the proposed Class.

92.      Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

93.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

94.      Common questions of law and fact exist, as to all members of the Class, and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)      whether Defendants' acts, as alleged, violated the federal securities laws;

(b)      whether Defendants' statements to the investing public in the Registration Statement and Prospectus misrepresented material facts about the financial condition, business, operations, and management of the Company; and

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

1         (c)      to what extent members of the Class have sustained damages and what is

2 the proper measure of damages.

3       95.     A class action is superior to all other available methods for the fair and efficient

4 adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as

5 the damages suffered by individual Class members may be relatively small, the expense and

6 burden of individual litigation make it impossible for members of the Class to individually redress

7 the wrongs done to them.  There will be no difficulty in the management of this action as a class

8 action.

9 **COUNT I**
**Violations of Section 11 of the Securities Act**

10 **Against All Defendants**

11       96.     Plaintiff repeats and realleges each and every allegation contained above as if fully

12 set forth herein.

13       97.     For purposes of this claim, Plaintiff expressly disclaims and excludes any

14 allegations that can be construed as alleging fraud, recklessness, or intentional misconduct, as this

15 cause of action is based expressly on claims of strict liability and/or negligence under the Securities

16 Act.

17       98.     This claim is brought by Plaintiff and on behalf of other members of the Class, who

18 purchased or otherwise acquired the Company's securities pursuant to or traceable to the

19 Company's IPO.  Each member of the Class acquired his, her, or its shares pursuant to and/or

20 traceable to, and in reliance on, the Registration Statement and Prospectus.  The Company is the

21 issuer of the securities through the Prospectus and Registration Statement, on which the Individual

22 Defendants were signatories.

23       99.     Defendants issued and disseminated, caused to be issued and disseminated, and

24 participated in the issuance and dissemination of, material misstatements and/or omissions to the

25 investing public that were contained in the Registration Statement and Prospectus, which

26 misrepresented or failed to disclose, among other things, the facts as set forth above.  By reason

27

28

AMENDED CLASS ACTION COMPLAINT - 33
(No. 2:18-cv-00812 RSM)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

1  of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated,

2  §11 of the Securities Act, 15 U.S.C. §77k.

3       100.    The Company is the issuer of the securities sold via the Registration Statement and

4  Prospectus.  As issuer of these securities, the Company is strictly liable to Plaintiff and the Class

5  members for the material misstatements and omissions contained therein.

6       101.    At the times they obtained their shares of the Company, Plaintiff and the members

7  of the Class did so without knowledge of the facts concerning the misstatements and omissions

8  alleged herein.

9       102.    This claim is brought within one year after discovery of the untrue statements and

10  omissions in and from the Registration Statement and Prospectus, which should have been made

11  and/or corrected through the exercise of reasonable diligence, and within three years of the

12  effective date of the Registration Statement and Prospectus.  It is therefore timely.

13       103.    At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true

14  value of the Company's securities was substantially lower than that paid by Plaintiff and the other

15  members of the Class.

16       104.    By reason of the foregoing, Plaintiff and the other members of the Class are entitled

17  to damages, as measured by the provisions of §11(e) of the Securities Act, 15 U.S.C. 77k(e), from

18  the Defendants and each of them, jointly and severally.

19  **COUNT II**
**Violations of Section 12(a)(2) of the Securities Act**

20  **Against All Defendants**

21       105.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully

22  set forth herein.

23       106.    For purposes of this claim, Plaintiff expressly disclaims and excludes any

24  allegations that can be construed as alleging fraud, recklessness, or intentional misconduct, as this

25  cause of action is based expressly on claims of strict liability and/or negligence under the Securities

26  Act.

27

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

107.    Defendants were sellers, offerors, underwriters, and/or solicitors of sales of the IPO pursuant to the Registration Statement.

108.    The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made therein not misleading, and concealed and failed to disclose material facts.  Defendants' actions of solicitation included participating in the preparation of the false and misleading Registration Statement.

109.    Plaintiff and the other members of the Class purchased or otherwise acquired Funko securities pursuant to and traceable to the defective Prospectus.  Plaintiff and the other Class members did not know or, in the exercise of reasonable diligence, could not have known of the untruths and omissions in the Registration Statement.

110.    Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

111.    By reason of the conduct alleged herein, these Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77*l*.  Accordingly, Plaintiff and the members of the Class, who hold Funko securities purchased pursuant and/or traceable to the IPO, have the right to rescind and recover the consideration paid for their securities and hereby elect to rescind and tender their Funko securities to the Defendants sued herein.  Plaintiff and Class members, who have sold their Funko securities, seek damages to the extent permitted by law.

**COUNT III**
**Violations of Section 15 of the Securities Act**
**<u>Against the Individual, ACON, and Fundamental Defendants</u>**

112.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

113.    For purposes of this claim, Plaintiff expressly disclaims and excludes any allegations that can be construed as alleging fraud, recklessness, or intentional misconduct, as this cause of action is based expressly on claims of strict liability and/or negligence under the Securities Act.

114.    This claim is asserted pursuant to §15 of the Securities Act, 15 U.S.C. 77o, against the Individual, ACON, and Fundamental Defendants, each of whom was a control person of the Company at all relevant times.

115.    The Individual, ACON, and Fundamental Defendants were control persons of the Company by virtue of, *inter alia*, their positions as senior officers and/or directors and/or majority owners of the Company and had the ability to control, and did control, the false and misleading statements and omissions contained in the Prospectus and Registration Statement.

116.    None of the Individual, ACON, and Fundamental Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

117.    This claim is brought within one year after the discovery of the untrue statements and omissions in the Prospectus and Registration Statement and within three years after the Company's securities were sold to the Class in connection with the IPO.  It is therefore timely.

118.    By reason of the above conduct, for which the Company is primarily liable, as set forth above, the Individual, ACON, and Fundamental Defendants are liable to Plaintiff and the Class for damages suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.    Determining that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as a Class Representative;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED this 30th day of April, 2019.

SCOTT+SCOTT ATTORNEYS AT LAW

By:  _/s/ Thomas L. Laughlin, IV_____
Thomas L. Laughlin, IV (*pro hac vice*)
tlaughlin@scott-scott.com
Jeffrey P. Jacobson (*pro hac vice forthcoming*)
jjacobson@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
Telephone: (212) 233-6444
Facsimile:  (212)233-6334

TOUSLEY BRAIN STEPHENS PLLC

By:  _/s/ Kim D. Stephens_____
Kim D. Stephens, WSBA #11984
kstephens@tousley.com
Janissa A. Strabuk, WSBA #21827
jstrabuk@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile:  (206) 682-2992

*Attorneys for Plaintiff Carl Berkelhammer*

AMENDED CLASS ACTION COMPLAINT - 37
(No. 2:18-cv-00812 RSM)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel.: 206-682-5600